UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VERONICA T. SPEARMAN | ) | CASE NO. 16-30772 |
|       Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| VERONICA T. SPEARMAN | ) | |
|       Plaintiff | ) | |
| v | ) | A. P. NO. 16-3010 |
| COMMONWEALTH CREDIT UNION | ) | |
|       Defendant | ) | |

**MEMORANDUM**

This case comes before the Court on the Motion for Summary Judgment filed by the Defendant, Commonwealth Credit Union ("CCU") and the Partial Motion for Summary Judgment filed by the Plaintiff, Veronica T. Spearman ("Spearman"). At issue is whether CCU violated the automatic stay imposed by 11 U.S.C. § 362 and whether CCU's actions violated the Kentucky Consumer Protection Act.[1] Upon review of the motions, Spearman's response, CCU's reply, and the supporting documents, the Court concludes that the Motion for Summary Judgment filed by CCU should be granted and Spearman's Partial Motion for Summary Judgment should be denied.

**JURISDICTION**

The subject matter jurisdiction of bankruptcy courts is set forth in 28 U.S.C. § 1334(a). Bankruptcy courts have jurisdiction to hear all cases under title 11 of the United States Code (the Bankruptcy Code) and all claims arising thereunder. 28 U.S.C. §§ 157(b) and 1334. These "arising

---

[1] By order entered June 7, 2016, the Court previously dismissed the counts of the complaint alleging false imprisonment.

under" claims are referred to as "core"proceedings and "either invoke[ ] a substantive right created by federal bankruptcy law or ... could not exist outside of the bankruptcy." Browning v. Levy, 283 F.3d 761, 773 (6th Cir. 2002) (internal quotation marks and citations omitted).  Core proceedings include matters concerning the administration of the bankruptcy estate, § 157(b)(2)(A), and "motions to terminate, annul, or modify the automatic stay." 28 U.S.C. § 157(b)(2)(G).

## FACTUAL AND PROCEDURAL BACKGROUND

Spearman is the debtor in this Chapter 7 bankruptcy case.  On July 16, 1997, prior to the filing of this Chapter 7 bankruptcy case, Spearman executed an Application for Membership with CCU.  With her membership, Spearman was granted electronic privileges such as use of electronic banking, use of an electronic debit card, and the ability to make withdrawals from an automated teller machine (ATM) (hereinafter collectively referred to as "Electronic Privileges").

With membership, CCU also had in place a Denial of Services Policy.  That policy provides as follows:

> It shall be the policy of Commonwealth Credit Union to offer services only to those members who have not caused the credit union a financial loss or otherwise abused the rights, privileges and benefits of credit union membership.
>
> Pursuant to this policy, no member of Commonwealth Credit Union will be eligible for financial services provided by this credit union if that member has willfully, or otherwise, caused the credit union to suffer a financial loss that the member was lawfully obligated to pay.
>
> Financial services are defined as any service provided by this credit union through the ordinary course of business, including, but not limited to:
>
> Consumer and mortgage loans of any type;
> Checking account and related services;
> Debit/ATM cards;
> Credit Cards;

2

>Any and all deposit products other than the standard share account, such as certificates, money market accounts, health savings accounts, and IRAs; and;
>Cashier's checks, money orders, safety deposit boxes and any other financial account.

As seen from the language quoted above, this policy restricts the Electronic Privileges of any Member who causes a loss to CCU. This policy includes, but is not limited to, Chapter 7 debtors who do not reaffirm debts owing to CCU. Member's accounts that cause a loss are not "frozen," but merely have the Electronic Privileges restricted. Members still have complete access to the funds in their accounts. Without Electronic Privileges, members must access their funds by writing a check or going into a branch and withdrawing the funds. According to CCU, the ultimate reason to restrict the Electronic Privileges is to prevent members from overdrawing their account.

On April 11, 2012, Spearman executed a Revolving Credit Agreement and Disclosure to obtain a personal loan from CCU. As of May 4, 2016, the loan had a balance of $2,401.46.

On March 12th, 2016, Spearman filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Western District of Kentucky.

On that same date, March 12, 2016, Spearman wrote a letter to CCU stating that she had "filed [for] bankruptcy on 3/12/16," and "This letter is to reaffirm all my accounts… ." Spearman drafted and sent this letter to CCU without consulting her attorney. Spearman never received a response to this letter from CCU.

Spearman previously had filed for bankruptcy and was familiar with the term "reaffirm." In the previous bankruptcy, Spearman explained that she had accounts with CCU and had reaffirmed on those debts. Spearman testified that the reason she sent the letter requesting to reaffirm in this case, was to ensure her account would "keep going smoothly."

On or around March 23, 2016, Spearman attempted to use her debit card to buy food, but was unable to do so. Due to the Denial of Services Policy, CCU had restricted the Electronic Privileges of Spearman. When asked about what damages she suffered by the restriction on her electronic banking privileges, Spearman testified she was not able to swipe her card so she could eat. She also stated the restriction interfered with her ability to pay bills online.

The next day, on or around Thursday, March 24, 2016, CCU explained to Spearman that CCU had disabled the Electronic Privileges pursuant to the Denial of Services Policy. When speaking to a representative of CCU, Spearman was told by the CCU employee that she "could always come into the bank ... to receive any of [her] funds… ."

During this conversation, Spearman admitted no one from CCU explained how she would be able to gain access to her debit card again. Specifically, no one from CCU told Spearman that she could restore her Electronic Privileges by reaffirming the debt owed to CCU.

On the next day, March 25, 2016, Spearman received a call from someone she stated was from the attorney's office, but was likely from CCU. She was told that a reaffirmation agreement was available, and asked for her email address. Spearman provided her email address, however, she did not receive the email containing a reaffirmation agreement.

Because she needed funds, Spearman went to a branch of CCU with her daughter, Glyn Sydnor. Spearman spoke with two tellers at that branch, Raffo Wimsett and Derek Sparkling. In Mr. Wimsett's deposition, he testified that he was not familiar with bankruptcy rules and bankruptcy laws. After some discussions between the tellers, and an unidentified employee in a backroom, Spearman was told how much she had in her account, and asked how much she wanted to withdraw. She requested a portion of her funds, $500.00, and, after receiving her money, she left the branch.

No one from CCU told Spearman that she could not remove all her money.

Spearman may have believed that she was prevented from withdrawing all of her funds, but that belief was not caused by any actions by CCU. Ms. Sydnor testified that the teller gave an "intimidation look" and projected negative "body language," but nothing was specifically said to make Spearman believe that all of her funds were not available to be withdrawn.

After receiving a portion of her funds that she had requested, Spearman drove to Frankfort to "see if [she could] reaffirm." Upon arriving, Spearman requested from the CCU employee the reaffirmation agreement. The CCU employee contacted another CCU employee who emailed a reaffirmation agreement. After printing the reaffirmation agreement, Spearman was advised that she did not need to sign the agreement. Spearman was specifically advised she could wait to discuss the agreement with her attorney. Upon reflection, Spearman did not execute the reaffirmation agreement.

On that same date, March 25, 2016, Spearman opened another account with a different credit union, Kentucky Telco Credit Union. Thus, at most, Spearman lost Electronic Privileges for a total of thirteen (13) days from the filing of her bankruptcy case, or three days from when her card was denied on March 22, 2016.

On April 6, 2016, Spearman filed this adversary proceeding alleging that CCU violated the automatic stay under 11 U.S.C. § 362. Spearman also alleged that CCU's actions violated the Kentucky Consumer Protection Act ("KCPA"). CCU has now moved for summary judgment, and Spearman has moved for partial summary judgment.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by

5

Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." Jones v. Union County, 296 F.3d 417, 423 (6th Cir. 2002). See generally Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997) (emphasis added). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. Tennessee Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir. 1996). Absent such evidence from the nonmoving party in a motion for summary judgment, the Court need not comb the entire record to determine if any of the available evidence could be construed in such a light. See In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

## DISCUSSION

As stated above, the issue before this Court is whether CCU actions violated either the 11 U.S.C. § 362 automatic stay or the KCPA. From the complaint, the Court can glean three separate actions that CCU took that Spearman alleges violates the law. First, Spearman alleges that by restricting the Electronic Privileges, CCU violated the automatic stay. Next, Spearman alleges that

by disallowing ready access to view her balance and transactions, CCU violated the KCPA. Specifically, by preventing the electronic access, CCU prevented Spearman from discovering whether or not CCU was deducting payments from her account, which Spearman characterizes as unfair, misleading, and deceptive. Finally, Spearman alleges that by "trying to have [Spearman] sign a reaffirmation agreement without counsel, and using duress to have her sign a reaffirmation agreement, [CCU] was acting unfairly and deceptively."

## I. The Stay Violation

The Court will address the alleged stay violation first. The filing of a bankruptcy petition triggers the protections of the automatic stay under 11 U.S.C. § 362(a). Section 362(a) prohibits creditors from attempting or continuing to collect most debts from the debtor. The automatic stay "[s]tops all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1978), 1978 U.S.C.C.A.N. 5963, 6297; Smith v. First Am. Bank ( In re Smith ), 876 F.2d 524, 526 (6th Cir. 1989). "It is elementary that the automatic stay comes into existence automatically and immediately upon the filing of a petition in bankruptcy." Webb Mtn, LLC v. Exec. Realty P'ship, L.P. ( In re Webb Mtn., LLC ), 414 B.R. 308, 335 (Bankr. E.D. Tenn. 2009) (internal quotation marks and citations omitted).

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1); In re Baer, 2012 WL 2368698 (6th Cir. BAP 2012). An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were "proximately caused by and reasonably incurred as a result of the violation of the automatic stay." Grine v. Chambers (In re Grine), 439 B.R. 461, 471 (Bankr. N.D.

Ohio 2010) (citing Archer v. Macomb Cnty. Bank, 853 F.2d 497 (6th Cir.1988)). A debtor must be able to demonstrate the amount of damages incurred with a reasonable degree of certainty and must support this claim with evidence. Baer, supra. A bare statement by the debtor that he incurred damages without some form of supporting evidence as to the amount will not satisfy the evidentiary requirements of § 362(k). Id.

In this case, it is clear that CCU did not violate the automatic stay. Upon a review of the case law addressing this issue, the vast majority of cases have held that restricting Electronic Privileges, such as took place in this case, does not constitute a violation of the automatic stay. See In re Henry, 129 B.R. 75, 78 (Bankr. E.D. Va. 1991) (credit union's policy of revoking membership benefits of members who caused credit union a loss does not violate automatic stay); and In re Jasper, 325 B.R. 50, 55 (Bankr. D. Me. 2005) (credit union's termination of Chapter 13 debtors' membership benefits and privileges did not violate automatic stay); In re All Trac Transp., Inc., 306 B.R. 859 (Bankr. N.D. Tex. 2004) (bank's action in discontinuing Chapter 11 debtor's access to bank's online banking system did not constitute a violation of the automatic stay).

The case of In re Rolanti, 2015 WL 1576275, at 3 (Bankr. D. Mass. 2015) addressed facts that are similar to the facts in this case. Unlike this case, the restriction of Electronic Privileges took place post discharge, and consequently there could be no stay violation. Instead, the court was asked whether requiring a reaffirmation agreement to restore Electronic Privileges violated the discharge injunction. The court found that the debtor's agreement with the bank, as expressed in the terms and conditions of the online account, did not commit the bank "to offer her online banking facilities come what may." Id. at 5. Additionally, like here, the bank's decision to restrict Electronic Privileges was motivated by a valid purpose, and not an attempt to collect a debt. The bank's

8

"representative did no more than inform [the debtor] that [the bank] would not restore her web access because she had not reaffirmed her debt to [the bank]. Nothing that the [bank] representative said to her, or to her son on her behalf, constituted an effort to collect the underlying debt." Id. at 5. Here, nothing CCU said or did was an attempt to collect upon the underlying debt, and certainly did not coerce or harass Spearman into reaffirming the debt.

Even if the case law was not overwhelmingly in CCU's favor, still this court could not find that CCU violated the automatic stay. From the complete record, the Court cannot characterize restricting Electronic Privileges as equating to an attempt to collect a debt. CCU presented evidence that the intent of the policy is to prevent members from overdrawing their account. Said policy is not restricted to debtors in bankruptcy, but applicable to all members who causes a loss to CCU. Spearman has presented no evidence to contradict this finding.

Spearman repeatedly makes reference that her account was "frozen" by CCU, which she contends would violate the provisions of the automatic stay. This argument ignores the fact that under its Denial of Services Policy, CCU does not "freeze" an account. The Electronic Privileges are restricted, but nothing prevents a member from withdrawing her funds. In this case, at no time was Spearman denied money from her account.

Spearman also makes the argument that when CCU presented the reaffirmation agreement to her, it was violating 11 U.S.C. § 362(a)(6). As stated above, the automatic stay precludes the creditor from seeking to obtain property of the estate or from assessing or collecting on a pre-petition claim against the debtor. 11 U.S.C. § 362(a)(3) and (6). The Sixth Circuit has held that § 362 is not automatically violated by sending a reaffirmation agreement to a debtor. Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 423 (6th Cir. 2000), concurring with the Seventh Circuit in In

9

re Duke, 79 F.3d 43, 45 (7th Cir. 1996). As the Circuit explained in Pertuso, "[s]omething more than mere contact must be alleged in order to state a claim under § 362." Pertuso at 423. A "course of conduct violates § 362(a)(6) if it "(1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances." Id. quoting In re Briggs, 143 B.R. 438, 450–51 (Bankr. E.D. Mich. 1992).

The facts in this case simply do not run afoul of the guidelines set forth in the Pertuso case. Here, Spearman was represented by counsel, whom she neglected to keep apprised of her actions. Spearman previously, and repeatedly, stated an intent to reaffirm. The Court can find no action in the record that CCU ever harassed or even demanded that Spearman sign a reaffirmation agreement. Indeed, from the record before this Court, it was CCU that advised Spearman to delay signing the reaffirmation agreement until after consulting her attorney. Viewed as a whole, and with proper deference to Spearman, the facts alleged in the complaint do not constitute conduct that "is contrary to what a reasonable person would consider to be fair under the circumstances." Briggs, 143 B.R. at 453.

The Court will conclude by also stating that even if the discontinuance of the Electronic Privileges had been a stay violation, the Court still could not award Spearman any damages. As stated above, an individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were "proximately caused by and reasonably incurred as a result of the violation of the automatic stay." Grine v. Chambers (In re Grine), 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010). Additionally, a debtor must be able to demonstrate the amount of damages incurred with a reasonable degree of certainty and must support this claim with evidence. In re Baer, 2012

WL 2368698 (6th Cir. BAP 2012). A bare statement by the debtor that he incurred damages without some form of supporting evidence as to the amount will not satisfy the evidentiary requirements of § 362(k). Id.

Nowhere in Spearman's pleadings – her complaint, her partial motion for summary judgment, her response to CCU's motion for summary judgment – can the Court find a single quantifiable actual damage. From the facts presented, Spearman suffered no damages from CCU's actions. Simply speaking, there is no injury in fact. Other than possibly attorney fees, which may have been the sole motivation for this case, the Court could not have awarded Spearman any damages, absent some evidentiary showing of some tangible harm. Assuming the allegations in the complaint are true, there was simply no damages alleged that could have been awarded in this case. In re Hutchings, 348 B.R. 847, 879 (Bankr. N.D. Ala. 2006) (for damages to be awarded to an individual under that § 362, the individual must prove an injury caused by the stay violation); Dawson v. Washington Mutual Bank (In re Dawson), 390 F.3d 1139 (9th Cir.2004), cert. denied, 546 U.S. 927, 126 S.Ct. 397, 163 L.Ed.2d 275 (2005) (mere aggravation, indignation and annoyance, or being "upset," does not warrant compensation under § 362).

## II. The Kentucky Consumer Protection Act

Next, Spearman alleges that by disallowing ready access to view her balance and transactions, CCU violated the KCPA. Specifically, by preventing the electronic access, CCU prevented Spearman from discovering whether or not CCU was deducting payments from her account, which Spearman characterizes as unfair, misleading, and deceptive. This argument is simply factually flawed. First, as shown by the record, Spearman had complete access to her account, just not by electronic means. She was in no way hindered from entering a branch and

asking about her account. While electronic access may have made tracking her account easier, Spearman cannot argue that it was the only means available to her to track the account. A simple inquiry at a branch would have allowed Spearman to discover whether any authorized or unauthorized deductions from her account had taken place. Moreover, requiring a person to personally inquire about an account rather than allow electronic access is neither unfair, misleading, nor deceptive. When Spearman joined CCU, she accepted the limitations on that membership. One of those limitations imposed restrictions on members that caused a loss to the credit union. Enforcing the limitation, that was agreed to by Spearman, can hardly be considered deceptive or misleading. While the restriction may have made managing the account more time consuming, such imposition does not violate the KCPA.

In her response to CCU's summary judgment motion, Spearman alleges that CCU violated the KCPA when it told Spearman that "the court would not grant a reaffirmation on an unsecured debt, and it would just be an agreement between CCU and her." Spearman then characterizes this statement as outright fraudulent. The Court must admit that it is rather perplexed by this argument. While the statement may have been technically incorrect in that the court <u>could</u> approve an unsecured reaffirmation agreement, it is certainly this Court's policy to not approve a reaffirmation agreement on a totally unsecured debt. As such, the Court cannot agree with Spearman's characterization that the statement was fraudulent, much less deceptive, or even misleading.

Finally, Spearman alleges that by "trying to have [Spearman] sign a reaffirmation agreement without counsel, and using duress to have her sign a reaffirmation agreement, [CCU] was acting unfairly and deceptively." Again, this argument is simply wrong. First, Spearman did not sign the reaffirmation agreement. Second, CCU did not harass or otherwise try to coerce Spearman into

12

signing the reaffirmation agreement. Debtor's counsel uses inflammatory language that CCU "shoved a reaffirmation agreement in front of [Spearman]." Counsel tries to imply that CCU hounded or harassed Spearman to sign the reaffirmation agreement, when, in reality, it was Spearman that contacted CCU initially about reaffirming her debt. It was then Spearman who entered the branch office and asked about reaffirming her debt. Spearman approached CCU not the other way around as Spearman's counsel would portray the events. Moreover, a CCU employed testified that she tried explaining to Spearman that she did not need to sign the reaffirmation agreement. It was the CCU employee that directed Spearman to contact her attorney, and finally, upon the urging of her daughter, Spearman decided to postpone reaffirming and left the branch. Nowhere in the record can the Court find that Spearman was intimidated or threatened to sign the reaffirmation agreement. Two of the CCU employees that dealt with Spearman did not even know what a reaffirmation agreement was, while the third advised Spearman to consult her attorney before signing. These actions were completely reasonable and responsible and clearly do not run afoul of the KCPA.

Spearman also argues that CCU would have accepted payments from Spearman, even if the court had refused to approve the reaffirmation agreement. Again, the Court does not quite understand the gist of this argument. Spearman argues that a "debtor can voluntarily choose to pay a discharged debt if he or she so desires, for instance if he or she feels a moral obligation to repay back a doctor, friend, or family member, however it would arguably be a violation of the discharge injunction for a creditor to receive payment after the court refused to sign off on a reaffirmation agreement." Spearman is of course referring to 11 U.S.C. § 524(f), which provides that "Nothing ... prevents a debtor from voluntarily repaying any debt." The Court cannot find anywhere in that

13

section, however, that the provision is limited to friends or family. Nor can the Court ascertain why the recipient of a voluntary repayment commits a discharge injunction violation if that recipient is not a friend or family member of the debtor.

Finally, Spearman argues that if CCU was not impermissibly trying to collect upon a debt, it should have simply canceled the account. This argument is also flawed. Had CCU canceled the account, would not Spearman have filed this same action, asserting that CCU was trying to collect a debt by threatening to cancel an account? Nevertheless, CCU did not cancel or close the account, but instead simply restricted the Electronic Privileges, which, as has been found many times, does not violate the automatic stay.

## CONCLUSION

Upon review of all the documents submitted, the Court must conclude that CCU neither violated the § 362 automatic stay nor the KCPA. This was not a difficult decision for the Court. Indeed, the law and facts on this were not complex, complicated, or even disputed. While the Court can appreciate zealous advocacy of a client, this matter bordered on the frivolous. While CCU has not asked for attorney fees, and the Court is not going to award attorney fees, counsel for Spearman should recognize that actions of this nature are not well-taken, and could subject counsel to Fed. R. Bankr. P. 9011 sanctions, including attorney fees. True stay violation cases, cases wherein debtors are truly harmed by a creditor's actions, should absolutely be pursued on behalf of debtors, but those actions must include some damages element, and not merely be prosecuted as a means to incur fees. For the reasons stated above, the Court will grant the motion for summary judgment and deny Spearman's partial motion for summary judgment. A separate order will be entered in accordance with this Memorandum.

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VERONICA T. SPEARMAN | ) | CASE NO. 16-30772 |
|         Debtor | ) | |
| | ) | |

| | | |
|---|---|---|
| VERONICA T. SPEARMAN | ) | |
|         Plaintiff | ) | |
| v | ) | A. P. NO. 16-3010 |
| COMMONWEALTH CREDIT UNION | ) | |
|         Defendant | ) | |

## ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Partial Motion for Summary Judgment is **DENIED** and the above styled action is dismissed.

There being no just cause for delay, this is a final and appealable judgment.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: March 9, 2017